**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert MARTINEZ, Defendant–**
**Appellant.**

**No. 97–10098.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 1998.

Decided July 12, 1999.

John Ashford Thompson, Kaneohe, Hawaii, for the defendant-appellant.

Louis A. Bracco, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: WALLACE, T.G. NELSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case raises two issues, whether evidence of a prior conviction was permissibly allowed in, and whether use of a "communications facility" under 21 U.S.C. § 843 is a permissible drug-related felony predicate for the increased penalties of 21 U.S.C. § 841(b)(1)(B).

## FACTS

Martinez and Serrano (Serrano's appeal is disposed of separately in a memorandum disposition) smuggled methamphetamine from San Francisco into Hawaii. Their courier, Crystal York, got caught in the airport. She agreed to help the police catch her boyfriend, Serrano, and the person to whom he was delivering the methamphetamine, Martinez.

Crystal then called Serrano on the telephone, with the police taping the call. He was angry that she had been in Hawaii for five hours without calling him, and complained about all the effort and money he had spent trying to find out if she got in all right. Crystal said "I was going to surprise you," "I love you," and explained that the reason for the delay was that "one of the pac—the things, you know .... [w]as jabbing me in the back, so I was messing with it. And the package broke. And then this stuff coming out, so I been ... sitting here in the bathroom trying to do it." Crystal had five pounds of methamphetamine taped to her body under her loosely fitting dress, but she never said in so many words what, exactly, was jabbing her in the back or coming out. The closest she came was "I'm ... scared, dude, I've been ... carrying this shit...." Her boyfriend Serrano did not have a car, just a motorcycle, so he got a ride to the airport from Martinez, to whom he was to transfer the methamphetamine. Serrano went inside the terminal and was arrested. Martinez was detained, and when Crystal identified Martinez to the police as a man to whom Serrano had previously delivered drugs, he was arrested.

## ANALYSIS

Martinez makes two arguments on appeal, that the judge erred by allowing in evidence of a prior conviction for importing heroin, and that a "communications facility" conviction under 21 U.S.C. § 843(b) was not a proper predicate for the sentencing enhancement under 21 U.S.C. § 841(b)(1)(A).

## I. The prior bad act.

 Martinez argues that his heroin importing conviction should have been excluded from evidence, because it was too old, ten years, and for a different drug, heroin rather than methamphetamine. His theory is that the conviction was not relevant to anything permitted to be proved under Federal Rule of Evidence 404(b), and that unfair prejudice outweighed any probative value under Rule 403.

 Our review of admission of evidence against Rule 403 and 404 objections is for abuse of discretion.[1] The trial judge carefully considered the evidence, and admonished the jury that it could not infer guilt from the prior conviction, but only use the evidence insofar as it bore on knowledge, intent and so forth (Martinez does not claim any error or inadequacy regarding the admonition, just the evidence itself).

The reason why the judge let the prior conviction in was, as he explained, that he anticipated a defense of lack of knowledge. He expected Martinez's defense to be that he was simply driving someone to the airport, and did not know that the purpose of the trip was to import narcotics. The judge anticipated that Serrano would defend on the basis that the government could not prove that he knew what, exactly, Crystal was bringing to Hawaii, and that the evidence showed merely that he was picking up his girlfriend at the airport when she arrived to surprise him for his birthday. Without knowledge, there was no conspiracy and no aiding and abetting, so there was no crime.

The judge's prediction was correct. The theory of the defenses was lack of proof of guilty knowledge. Serrano's lawyer established with Crystal's girlfriend that even though they lived together and shopped for the loose fitting dress together, she thought Crystal was just going to Hawaii to be with Serrano on his birthday, and did not know she was bringing in drugs. He

established that Crystal was not the "goodie two-shoes" she pretended to be, and that Serrano had been trying to get her to stop using drugs. He argued in his opening statement that the evidence would show that another man, not a defendant, was the person for whom Crystal was importing the methamphetamine, and that Crystal's "I just wanted to surprise you honey" was basically true, that Crystal was surprising Serrano with a trip he did not know she was going to make for a purpose he did not know she had. He did not even have a car available to go to the airport and get her. Martinez's lawyer said that all the evidence would prove was that Martinez gave Serrano a ride to the airport, without even knowing Serrano's last name, and without any knowledge of a drug importation scheme.

The judge excluded evidence of some additional convictions against both men because he thought the risk of unfair prejudice outweighed the probative value, and carefully parsed our precedents on admission of prior narcotics offenses in narcotics cases. Though expressly concerned about the risk of unfair prejudice, he concluded that what he did admit was relevant to knowledge. He examined the exact words of Crystal's phone call to Serrano, and noted that she never expressly referred to "meth" or "ice," but that prior criminal activity regarding narcotics would make Crystal's references to what she was carrying comprehensible, and thereby show knowledge. Though the prior offenses were for different drugs, cocaine and heroin, the fact that distribution quantities were involved made the crimes similar enough to bear on Serrano's and Martinez's knowledge. The judge kept out a Martinez conviction because it was too old, but admitted a 1993 final conviction based on 1986 conduct (trial was in 1996). He considered the age to be somewhat offset by Martinez's inability to complete more recent crimes because he was in prison for most of the intervening time.

---

1. *United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994).

■ The trial judge was within his discretion. Of course the government may not, under Rule 404(a), prove that the defendant is a bad person, simply to show that in all likelihood he acted criminally on the occasion at issue.[2] But it may prove that the defendant previously committed a crime in order to prove that the defendant had knowledge relevant to the crime at issue.[3] "Evidence of other crimes, wrongs, or acts .... may, however, be admissible ... as proof of ... knowledge...."[4] That is what the evidence was admitted for. The judge carefully considered the risk of unfair prejudice, but reasonably concluded that it was outweighed by the probative value of the evidence.

■ Similarity of the crimes, identity of the narcotics, age of the prior offense, and other factors all may bear on whether the prior criminal or wrongful act really proves anything except that the defendant is a bad person. Martinez correctly cites *Mayans*[5] for the proposition that where the evidence comes in to prove knowledge, admissibility requires "a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act."[6] Sometimes the prior bad act evidence does not prove any element of the crime, just background of the defendant, which is to say bad character from which the government hopes for an inference of conduct consistent with bad character, so the evidence is excluded.[7]

■ Thus the question in a prior bad acts case is whether the proffered evidence really does tend to prove something material by a means other than bad character. In this case, was there a logical connection between the knowledge that would have been gained from the prior crime and the knowledge at issue in this case? There

was. The government had to prove that Serrano knew what Crystal was bringing him, and that Martinez knew what he was bringing Serrano to the airport to accomplish. The defense theory was that it could not prove such knowledge beyond a reasonable doubt. As to Serrano, the trial judge pointed out the indeterminacy of Crystal's words on the telephone. She did not say she had methamphetamine with her and wanted to be picked up so that she could deliver it to Serrano for a handoff to Martinez. She said that a package of "stuff" was "jabbing me in my back" and referred to it as "shit" rather than methamphetamine. She also said "I love you" and "I was going to surprise you." A man ignorant of the narcotics trade might respond to "I love you" and "I was going to surprise you" by going to the airport and getting the woman who said these things. The ignorant man might respond to the sweet words without asking, "What in the world are you talking about?" regarding whatever was jabbing the woman in the back. But prior drug crime would make the references to what she was carrying and the physical discomfort and packaging failure much more comprehensible. The prior conviction genuinely did tend to prove that Serrano knew what Crystal was talking about, so that he knew he was going to the airport to import drugs and not merely to pick up a woman who told him she loved him and had wanted to surprise him for his birthday.

■ As to Martinez, the case is closer, because he was not on the telephone with Crystal. The court had to consider what he would know, as a result of his prior drug importing conviction, relevant to a material proposition in this case. It is not enough to show that a defendant has

2. *See* Federal Rule of Evidence 404(a), (b).

3. *See* Federal Rule of Evidence 404(b).

4. *Id.*

5. *United States v. Mayans,* 17 F.3d 1174 (9th Cir.1994).

6. *Id.* at 1181–82.

7. *See United States v. Hill,* 953 F.2d 452 (9th Cir.1991).

knowledge of something not probative of some proposition material to the charges.[8] The court needs a "focused determination of relevance."[9] It had one. Without any other evidence, what the jury had was Martinez driving Serrano to the airport for what Serrano knew was narcotics importing. The question, the only salient question, was whether Martinez knew what Serrano was going there for. Crystal testified that Serrano had transferred narcotics to Martinez before. But Crystal was a person of quite limited credibility. The jury had to decide whether what she testified to, that Martinez was in on the deal, was true. Martinez's prior convictions for importing drugs tend to prove knowledge of how drugs are imported, a specialized sort of knowledge most people lack. That might include packaging, transfer to one or more individuals, transporting, avoiding apprehension during the drive, and other knowledge gained from experience. Also, as to whether Martinez would realize he was driving Serrano to the airport to pick up drugs, not just to pick up his girlfriend, the prior would tend to show "he would know [such crime] when he sees it."[10] An important kind of knowledge experts have, gained from experience, is recognition of patterns; experience in crime may tend to prove expertise in pattern recognition for materially similar crimes. This case is similar to *Arambula–Ruiz*, in that the prior conviction "made the existence of his knowledge concerning the current [drug] sale more probable than not" and helped disprove a "contention that he was merely an innocent bystander, and tended to show that he was aware of the [drug] transaction."[11]

▇ Though Martinez argues that his prior conviction for heroin importation has no bearing on his knowledge relating to this methamphetamine importation, we cannot see why not. For some drug cases, the specialized knowledge might not carry over, so, for example, a conviction for carrying a backpack of marijuana across the border might not tend to show knowledge of heroin in a car one was driving across a border.[12] Prior sale of heroin might not tend to prove knowledge of how to "rock up" cocaine into crack, or how to cook methamphetamine from precursor chemicals. But there must be a lot of knowledge of smuggling that would carry over from one compact, relatively odorless, extremely expensive, illegal powder to another. A prior conviction may be sufficiently probative of something material, even though dissimilar, when it makes the "existence of the defendant's knowledge more probable than it would be without the evidence."[13] The judge was within his discretion in concluding that it did in this case.

▇ The district judge articulated his reasons quite carefully, and thoroughly analyzed our cases bearing on the issue. That he did not mechanically recite the four part test of *Arambula–Ruiz*, or otherwise perform any mechanical recitation of factors not especially relevant, has no bearing on whether we affirm. A trial judge need not provide a "detailed" or "mechanical" recitation of the Rule 403 factors.[14]

## II. Sentencing.

Martinez was sentenced to life imprisonment without possibility of parole. The

---

**8.** *United States v. Arambula–Ruiz,* 987 F.2d 599, 605 (9th Cir.1993).

**9.** *United States v. Mayans,* 17 F.3d 1174, 1183 (9th Cir.1994).

**10.** *United States v. Blitz,* 151 F.3d 1002, 1008 (9th Cir.1998).

**11.** 987 F.2d at 603; *see also United States v. Batts,* 573 F.2d 599, 603 (9th Cir.1978); *United States v. Mehrmanesh,* 689 F.2d 822, 831

(9th Cir.1982); *United States v. Otis,* 127 F.3d 829, 834 (9th Cir.1997).

**12.** *See United States v. Hernandez–Miranda,* 601 F.2d 1104, 1108 (9th Cir.1979).

**13.** *United States v. Montgomery,* 150 F.3d 983, 1001 (9th Cir.1998) (citation omitted).

**14.** *United States v. Mayans,* 17 F.3d 1174, 1183 (9th Cir.1994). *See also United States v. Rrapi,* 175 F.3d 742, 748–49 (9th Cir.1999).

district judge understood this to be a mandatory statutory sentence under 21 U.S.C. § 841(b)(1)(A) for a person with "two or more prior convictions for a felony drug offense." Martinez argues that one of the two convictions could not properly be counted, and also that the judge should not have remarked, or considered, that the dispute between a thirty-year mandatory sentence and a mandatory life sentence made no practical difference to a sixty year-old man.

On the first issue, whether Martinez's prior conviction was a proper predicate, the question is what "felony drug offense" means in 21 U.S.C. § 841(b)(1)(A). Martinez argues that section 841 specifically lists the offenses to which it refers, and omits the section 843(b) offense Martinez was convicted of, and section 843(b) provides the penalties for section 843(b) violations.

That is not a correct reading of the statutes. Congress requires "a mandatory term of life imprisonment" for persons who violate specified statutes "after two or more prior convictions for a felony drug offense."[15] There is no list of prior felony drug offenses from which Martinez's *expressio unius est exclusio alterius* inference could be drawn. Instead, the statute has a definitions section that expressly defines "felony drug offense" as a felonious conduct under a law restricting "conduct relating to" narcotics.[16] Nor are the punishments in section 843, for the communications offense, the relevant ones; the punishment to be construed is in section 841, for persons who commit a section 841 offense and have a prior felony drug offense. Martinez also argues for application of the rule of lenity, but that requires an ambiguity, and ·as we explain below, there is no statutory ambiguity to which to apply the rule of lenity.

The question under the mandatory life sentence provision is whether the law prohibiting Martinez's prior offense spoke to "conduct relating to" narcotics. The law criminalizing his prior offense made it a felony "to use any communications facility" to commit a felony under "this subchapter or subchapter II of this chapter."[17] The reference to "this subchapter" traces, through the table of contents in the United States Code, to 21 U.S.C. §§ 801–904, "Subchapter I—Control and Enforcement," of "Chapter 13—Drug Abuse Prevention and Control." The reference to "subchapter II of this chapter" traces to 21 U.S.C. §§ 951–971, "Subchapter II—Import and Export," of "Chapter 13—Drug Abuse Prevention and Control." All of the felonies in those statutes are crimes "relating to" narcotics. Thus the felony of using a communications facility to commit any of them, under 21 U.S.C. § 843(b) is conduct "relating to" narcotics. We construed 21 U.S.C. § 843(b) as requiring "that a defendant 'knowingly or intentionally' further the commission of the drug offense" in *United States v. Vea–Gonzales.*[18] Martinez argues that *Vea–Gonzales* should be distinguished because it was construing a guideline, not the mandatory life imprisonment statute, but the distinction makes no difference, because the statutory language unambiguously compels the result.

**15.** 21 U.S.C. § 841(b)(1)(A).

**16.** "The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." 21 U.S.C. § 802(44).

**17.** 21 U.S.C. § 843(b). "It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter." 21 U.S.C. § 843(b). The U.S.C.S. version of this statute says "this title or title III" instead of "this subchapter or subchapter II of this chapter," and the history annotation says that those references are to titles in the 1970 Act, now codified as 21 U.S.C. §§ 801 et seq. and 21 U.S.C. §§ 951 et seq.

**18.** *United States v. Vea–Gonzales,* 999 F.2d 1326, 1330 (9th Cir.1993).

Although this is the first time we have answered this question, two other circuits have answered it the same way. The Eighth Circuit concluded that because the communications crime fell within "this subchapter" it was a "felony drug offense" as defined by 21 U.S.C. § 841(b)(1)(A).[19] And the Fifth Circuit held that a communications offense under 21 U.S.C. § 843(b) necessarily had to relate to a drug offense.[20]

■ Martinez's other point appears to be that Martinez's sentence should be vacated because the judge had an animus against older people (Martinez was sixty). The argument is based on the judge's remark that the choice between sentence Martinez would get if his communication offense was not treated as a prior felony drug offense, thirty years, and the mandatory life sentence he would get if it was "simply doesn't make any difference, zero difference." The argument is immaterial and also unfair to the judge. It is immaterial because the judge had no discretion under the statute. A life sentence was mandatory.

The argument is unfair, because the context is the opposite of what counsel's brief intimates. The judge suggested to the *prosecutor* that there was no sense insisting on application of the mandatory life sentence provision in the face of a defense objection, because it would merely generate an appeal of a point as yet undecided in the Ninth Circuit, and as a practical matter the thirty year sentence for this sixty year old man would be of the same duration. Far from "use of a suspect class, such as age, to justify the aggravation of a sentence," or "indifference" by the judge amounting to "cruel and unusual punishment," as counsel says in the brief, the judge was telling *the prosecutor* that he was demanding "a futile exercise" of the court, though "regretfully" he would perform it if the prosecutor insisted on it. The *defense lawyer* said "there is no case

law yet" but it "makes no difference" and "it's like splitting hairs."

AFFIRMED.

---

**19.** *United States v. Karam,* 37 F.3d 1280, 1289 (8th Cir.1994).

**20.** *United States v. Mankins,* 135 F.3d 946, 949 (5th Cir.1998).