UNITED STATES of America, Plaintiff–Appellee,

v.

Marciano MAGALLON–JIMENEZ, aka Marciano Jimenez Magallon; aka El Viejo; aka El Viejito, Defendant–Appellant.

No. 99–50561.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 2000.

Filed July 21, 2000.

---

Korey House, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Lisa E. Feldman, Office of the U.S. Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: TROTT, FERNANDEZ, and McKEOWN, Circuit Judges.

TROTT, Circuit Judge:

Marciano Magallon–Jimenez ("Magallon") appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Magallon contends that the district court erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29"). He argues that the evidence (1) failed to show that he knew that the truck in which he was a passenger contained a Pepsi box full of cocaine, and (2) was insufficient to convict him of possessing the cocaine with the intent to distribute it. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we **AFFIRM**.

## BACKGROUND

Magallon was arrested on September 28, 1996 in Panorama City, California, when a truck in which he was a passenger was pulled over by a Los Angeles police officer on a suspicion that the driver was carrying drugs. The facts leading up to Magallon's arrest are as follows:

On September 28, 1996, Los Angeles Sheriff's Deputy James Roche was conducting surveillance as part of a joint task force investigation at 9256 Wakefield Avenue in Panorama City. Based upon information obtained from a wiretap on the cellular telephone of William Meza ("Meza"), Deputy Roche knew that narcotics were going to be transported from the Wakefield Avenue location.

As anticipated, on September 28, Roche observed Magallon's co-defendant, Jose Guadalupe Ruelas ("Ruelas"), arrive at the Wakefield location and depart approximately twenty minutes later carrying a Pepsi Cola box. Roche could not tell whether the Pepsi box contained drugs, but he suspected that it did. Roche observed Ruelas put the Pepsi box into his white Ford pickup truck and drive off alone.

Deputy Roche followed Ruelas. After several minutes, Ruelas pulled over to the curb, stopped, and picked up Magallon, who was waiting in a grassy area a short distance from Ruelas's residence. Deputy Roche then contacted Robert MacGregor ("MacGregor"), a Los Angeles police officer. Because Roche believed Ruelas might be carrying drugs, Roche asked MacGregor to conduct a traffic stop of Ruelas's white truck. MacGregor conducted the traffic stop as requested, but did not see any contraband in the truck. Specifically, MacGregor testified that when he stopped the truck he looked at the driver's feet, the truck's floorboard and "all the way over to the passenger side," but did not see anything that resembled drugs. MacGregor also testified that he did not see a Pepsi box at Magallon's feet nor anywhere else in plain view in the truck. Thus, although Ruelas's driver's license and registration were expired, MacGregor warned him not to drive until he straightened out his paperwork and allowed him to leave.

After Ruelas departed, the sheriff's deputies advised MacGregor that he should again pull over the white truck. The deputies still suspected that the truck contained drugs, and they did not want Ruelas to escape. Pursuant to the deputies' instruction, MacGregor stopped Ruelas and Magallon for a second time. This time, MacGregor advised Ruelas that he was under arrest for driving without a current license and asked him to step out of the truck. When Ruelas stepped out of the truck, MacGregor could see all the way over to the passenger side. At this moment, for the first time, MacGregor saw a Pepsi box between Magallon's legs in the front seat, a box that apparently was not there during the first stop.

MacGregor testified that when Magallon exited the truck on his request, he leaned on the Pepsi box to assist him in getting out of the vehicle. MacGregor took a closer look at the Pepsi box, which he could see contained "wrapped narcotics." Officer MacGregor further testified that the Pepsi box had been taped in the front and had slits on the top so that "you [could] see down inside and very clearly that in fact the box did not contain cans, but something other than cans." It was later determined that the Pepsi box contained five kilograms of cocaine.

Magallon was arrested and subsequently charged with conspiracy and possession with intent to distribute cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). Magallon pleaded not guilty and proceeded to a bench trial on April 28, 1999. At trial, in addition to the testimony of Deputy Roche and Officer MacGregor, the government attempted to introduce telephone transcripts of wiretapped communications between Magallon's alleged co-conspirators, Meza and Mario Ruvalcaba ("Ruvalcaba"). These transcripts were very incriminating and potentially implicated Magallon as being "El Viejito," a little old man whom Meza and Ruvalcaba discussed as a buyer of drugs. However, because the district court concluded that there was insufficient evidence to connect Magallon to a conspiracy to sell cocaine, it excluded the tapes, finding that the co-

conspirator exemption to the hearsay rule did not apply.

Magallon did not testify. After hearing testimony and argument, on April 29, 1998, the district court concluded that, without the transcripts of the wiretapped communications, there was insufficient evidence to connect Magallon to the charged conspiracy. Accordingly, the court granted Magallon's motion for judgment of acquittal under Rule 29(a) as to count one—conspiracy. However, the court concluded that there *was* sufficient evidence on count two, and convicted Magallon of possession of cocaine with intent to distribute.

Subsequently, on November 2, 1998, Magallon filed a motion for judgment of acquittal under Rule 29(c) on count two—possession with intent to distribute. This motion was denied by the district court. On August 26, 1999, Magallon filed a request for reconsideration of his Rule 29(c) motion, which the district court denied. On August 30, 1999, the district court sentenced Magallon to 57 months imprisonment with a five-year term of supervised release. Magallon now appeals.

## DISCUSSION

### A. Standard of Review

 This court reviews a motion for judgment of acquittal based on insufficiency of the evidence de novo. *United States v. Hernandez,* 105 F.3d 1330, 1332 (9th Cir.1997). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Lennick,* 18 F.3d 814, 818 (9th Cir.1994). This same test applies to both jury and bench trials. *United States v. Doe,* 136 F.3d 631, 636 (9th Cir.1998).

### B. Rule 29 Motion

 Magallon argues that, because there was insufficient evidence to support his conviction for possession of cocaine

with intent to distribute, the district court erred in denying his Rule 29 motion for judgment of acquittal. Specifically, Magallon argues that he was merely a passenger in Ruelas's truck and did not know of or possess the cocaine. We disagree and hold that where five kilograms of cocaine were found recently lodged between Magallon's feet in the passenger side of a vehicle involved in an active drug transaction, a rational trier of fact could conclude that Magallon knew about, possessed, and intended to distribute the cocaine.

 To sustain a conviction for possession with intent to distribute cocaine, the government must prove that the defendant (1) knowingly, (2) possessed the cocaine, (3) with intent to distribute it. *See* 21 U.S.C. § 841(a)(1); *United States v. Mora,* 876 F.2d 76, 77 (9th Cir.1989). The government has proven all three elements in this case.

Magallon argues that the district court incorrectly concluded that he knew about the cocaine, because there was no direct evidence of his knowledge. However, this argument is unpersuasive in light of the convincing direct and circumstantial evidence produced by the government. *See United States v. Walker,* 993 F.2d 196, 200 (9th Cir.1993) (noting that knowledge may be proven by circumstantial evidence).

Viewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution, the court's conclusion that Magallon had knowledge of the cocaine was correct and is supported by the record. The court was influenced by Officer MacGregor's testimony that during the first traffic stop the Pepsi box was not visible, but on the second traffic stop, less than ten minutes later, the box had been placed between Magallon's legs on the passenger side of the truck. This direct evidence supports the conclusion that Magallon knew about and handled the cocaine. The district court concluded that the facts supported a finding that "this defendant would have knowledge of the criminal activity in progress." The district court

found that "the box was not there" during the first stop, but that at "the second stop it was there." The district court was entitled to rely on this combination of direct and circumstantial evidence in determining that Magallon knew about the presence of the cocaine.

As far as whether Magallon was aware of the nature of the contents of the box, the district court noted that, although the cocaine was enclosed in the Pepsi box, "the other circumstances with regard to the appearance[ ] and the weight and the other circumstances of the Pepsi box," indicated that Magallon knew there were narcotics in the box. This conclusion also is supported by the record. MacGregor testified that "[u]pon looking at the very top of the Pepsi box after extracting the passenger, the defendant, and having him stand at the side of the vehicle, I could clearly see through the top of the box that there was in fact was appeared to me to be in plain sight from where I was standing, wrapped narcotics." This testimony, in conjunction with the testimony regarding the placement of the Pepsi box at Magallon's feet, was sufficient for the district court to conclude that Magallon knew what was in it.

■ Next, in addition to proving knowledge, the government must also prove that Magallon possessed the cocaine. *See Mora*, 876 F.2d at 77. Possession may be actual or constructive. *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir.1986). In order for Magallon to be guilty of possession, he must have had the power to exercise dominion and control over the cocaine found in Ruelas's truck. *See United States v. Penagos*, 823 F.2d 346, 350 (9th Cir.1987). We agree with the district court that Magallon exercised such control in this case.

The most incriminating evidence against Magallon is the fact that the cocaine-laden Pepsi box was found between his legs when MacGregor stopped Ruelas's truck. Viewed in the light most favorable to the government, Magallon was caught redhanded with five kilograms of cocaine. This direct physical possession, in conjunc-

tion with the circumstantial evidence heard by the district court, was sufficient to conclude that Magallon had control over the cocaine. The incriminating circumstantial evidence included MacGregor's testimony that the Pepsi box was not visible in Ruelas's truck during the first traffic stop, but was clearly visible between Magallon's feet when MacGregor stopped the truck the second time. This testimony supports a reasonable inference that as the passenger in a moving vehicle, Magallon, at the very least, assisted Ruelas in moving the heavy Pepsi box and, more likely, moved the box himself. By being involved in the movement to a position directly between his feet, Magallon exercised control over the cocaine.

The fact, as concluded by the district court, that Ruelas picked up Magallon in the midst of a drug deal, while not conclusive, strongly supports the district court's decision. It is highly unlikely that Magallon would be sitting in Ruelas's truck with a 10 pound box of cocaine at his feet if he were merely tagging along as a friend of Ruelas's or was present for some other purely innocuous reason. Taking the facts in the light most favorable to the government, this inference is manifestly reasonable. Similar sentiments have been acknowledged by this court in other cases. *See, e.g., United States v. Mesa–Farias*, 53 F.3d 258, 260 (9th Cir.1995) (holding that it was implausible that a drug dealer would allow "an outsider to drive a truck loaded with cocaine and heroin or sleep in an apartment containing drug paraphernalia and substantial amounts of cash").

■ Finally, the government has produced evidence sufficient to conclude that Magallon intended to distribute the cocaine. Magallon possessed approximately five kilograms of cocaine, which, as noted by the district court, is not an amount ordinarily associated with personal use. We have repeatedly inferred an intent to distribute from a large quantity of drugs, *see, e.g., United States v. Davila–Escovedo*, 36 F.3d 840, 843 (9th Cir.1994) (citing

**1114**

United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.1988)), and the five kilograms at issue here, which were recovered in the midst of a drug transaction, are certainly sufficient to support such an inference and to sustain Magallon's conviction under 21 U.S.C. § 841(a)(1).

In arriving at these conclusions, we necessarily reject Magallon's reliance upon several of our cases where we have held that mere presence in a place where drugs are found, such as a truck or dwelling, is insufficient to sustain a conviction for possession with intent to distribute. See, e.g., United States v. Vasquez–Chan, 978 F.2d 546, 550 (9th Cir.1992) (holding that a housekeeper's "mere proximity to the drug, her presence on the property where it is located, and her association with the person who controls it are insufficient to support a conviction for possession"); United States v. Sanchez–Mata, 925 F.2d 1166, 1169 (9th Cir.1991) (noting that "it is 'well established that a passenger may not be convicted unless there is evidence connecting him with the contraband, other than his presence in the vehicle' "); United States v. Ramirez, 880 F.2d 236, 238–39 (9th Cir.1989) (holding that evidence was insufficient to support a conviction for possession of cocaine with intent to distribute where defendant, a known cocaine user, was present in a home in which law enforcement agents discovered large amounts of cocaine and easily accessible cash but had no specific evidence of defendant's involvement in the sale of the drugs); United States v. Weaver, 594 F.2d 1272, 1275 (9th Cir.1979) (reversing for insufficient evidence where defendant had a package of cocaine under his seat and a vial of cocaine and substantial sum of money on his person, but neither knew about nor touched the cocaine). These cases are all distinguishable.

Here, where Magallon knew that the Pepsi box contained illegal narcotics and was in direct physical contact with the box when he and Ruelas were stopped by Officer MacGregor, shortly after the drugs had been procured, we cannot compare his case to those where the defendant was "merely present" somewhere at the scene with no knowledge of or connection to the contraband whatsoever. Magallon had actual possession of the contraband during its active transportation. One would have had to have been "born yesterday" not to regard the facts in this case as a highly incriminating scenario.

■ In sum, viewing the evidence as a whole and in the light most favorable to the prosecution, there was sufficient evidence such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. 2781. It is the province of the trier of fact "to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987). Here, as the trier of fact, the district court had the opportunity to hear all the evidence and to consider Magallon's attorney's interpretation of it. That the court rejected Magallon's arguments and concluded that he knowingly possessed the cocaine with intent to distribute finds ample support in the evidentiary record.

### CONCLUSION

For the foregoing reasons, we conclude that there was sufficient evidence to convict Magallon of possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1). In summary, this is a standard of review case. In that light, Magallon was caught flagrante delicto with five kilograms of cocaine, which he knew about, exercised control over, and intended to distribute. Accordingly, the district court properly denied Magallon's motion for judgment of acquittal under Rule 29, and we **AFFIRM**.