UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Juan RAMIREZ–ROBLES,
Defendant–Appellant.

No. 03–30122.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 2, 2004.

Filed Oct. 21, 2004.

---

Richard L. Fredericks, Eugene, OR, for the defendant-appellant.

Douglas W. Fong, Assistant United States Attorney, Medford, OR, for the plaintiff-appellee.

Before: HUG, McKEOWN, and FISHER, Circuit Judges.

HUG, Circuit Judge.

Jose Ramirez–Robles appeals his jury convictions of distribution of methamphetamine and conspiracy to distribute methamphetamine, violations of 21 U.S.C. §§ 841(a)(1) and 846. The charged transaction took place between Ramirez–Robles's girlfriend, Sheree Turner, and a government informant. At trial Turner testified that she was acting at Ramirez–Robles's direction. On appeal Ramirez–Robles argues that there was insufficient evidence to convict him, that the district court erred by admitting evidence of his prior bad acts, and that the district court erred by excluding polygraph evidence without a *Daubert* hearing. We affirm.

## I. Facts

*Methamphetamine Sale*

Ramirez–Robles's conviction arises out of Sheree Turner's sale of methamphetamine to Jerry Guthrie, a government informant, on October 24, 2001.[1] Turner is Ramirez–Robles's girlfriend and owns the house at which the sale took place, although Ramirez–Robles lived there and paid for all expenses. The transaction had begun on October 23, 2001, when Guthrie went to the house looking for Turner. Ramirez–Robles answered the door and expressed displeasure at seeing Guthrie. After later making contact with Turner, Guthrie arranged to make the transaction at the house the next day, on October 24, 2001.

On the day of the deal Guthrie wore a wire to the house, and he and Turner went to the bedroom to complete the transaction. The precise details of the transaction are contested. In the transcript of the deal, Turner repeatedly refers to a man who was arranging the deal. Government's Supplemental Excerpts of Record

("GER") 29–35. The man referenced is never named.

The government argues that Ramirez–Robles is the man referenced during the deal. To support this theory, the government cites the fact that his voice is heard on the tape just after Turner has gone to consult with the person who was arranging the deal. Ramirez–Robles argues that the fact that his voice is on the tape actually supports his theory that another person was arranging the deal. At trial Ramirez–Robles presented testimony from Sarah Westlake, a friend of Turner's who was sitting in the living room during the deal. She testified that during the deal Turner came to the living room to make a telephone call in which Turner seemed to be asking the person she called what to do. Because Ramirez–Robles was in the house during the deal, he argues that he cannot be the person on the telephone who was arranging the deal.

Guthrie left the deal with a quarter pound of methamphetamine, for which he did not pay. He presented the methamphetamine to the police, who arrested Turner and Ramirez–Robles the next day. During the subsequent search of the house the police found a safe in the garage that contained a gun, $3,000, and the digital scales used in the transaction. Ramirez–Robles admits the scales were his. In the house the police found a small amount of cocaine and various drug paraphernalia.

Both Ramirez–Robles and Turner admitted to being methamphetamine users. Ramirez–Robles admitted to two of the charges against him, illegal possession of a firearm and illegal re-entry. He denied any knowledge of, or involvement in, the charged transaction. Turner testified for the government in return for immunity. She testified that Ramirez–Robles master-

---

1. The facts recited here are undisputed unless    otherwise indicated.

minded the transaction, setting the price and providing the methamphetamine.

*Pre–Trial Motions*

Before the trial began both parties submitted motions to determine the admissibility of evidence. The district court ruled that Ramirez–Robles could not present the testimony of a polygrapher who would state that Ramirez–Robles truthfully answered in the negative the following three questions:

1. Was that quarter pound of methamphetamine sold on October 24th last year yours?

2. Did you know on October 24 of last year, that Sheree was going to sell that quarter pound of methamphetamine?

3. Did you order that quarter pound of methamphetamine that was sold on October 14 of last year?

The district court decided to allow testimony from Juan Mendez who would testify that he had been buying small quantities of methamphetamine from Ramirez–Robles throughout the month of October, 2001.

The district court withheld judgment on whether the government could present evidence of Ramirez–Robles's prior convictions: a 1997 conviction for possession of a controlled substance (involving a "user" quantity of methamphetamine) and a 1998 conviction for possession of methamphetamine for sale. After the prosecution completed its case, the district court ruled that the government could present evidence of Ramirez–Robles's prior convictions, but not their underlying facts. Once Ramirez–Robles admitted to the convictions on direct examination, the government allowed inquiry into their underlying facts during cross examination.

The jury convicted Ramirez–Robles of distribution of methamphetamine and conspiracy to distribute methamphetamine.

He now appeals arguing that there was insufficient evidence to convict him, that the testimony of Juan Mendez and the evidence of his prior convictions should not have been admitted, and that the district court did not conduct a proper *Daubert* hearing before excluding the polygraph evidence. We have jurisdiction under 28 U.S.C. § 1291, and we now affirm.

## II.   Discussion

### A.   *Standard of Review*

We review the denial of a motion for acquittal based on insufficiency of the evidence *de novo*. *United States v. Magallon–Jimenez,* 219 F.3d 1109, 1112 (9th Cir.2000). A district court's decision to admit evidence of prior bad conduct under Federal Rule of Evidence 404(b) is reviewed for abuse of discretion. *United States v. Arambula–Ruiz,* 987 F.2d 599, 602 (9th Cir.1993). The district court's decision to include or exclude expert witness testimony, such as a polygrapher's testimony, is also reviewed for an abuse of discretion. *United States v. Campos,* 217 F.3d 707, 710 (9th Cir.2000).

### B.   *Sufficiency of the Evidence*

Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Magallon–Jimenez,* 219 F.3d at 1112.

In *United States v. Sanchez–Mata,* we outlined the three legal theories that may be used to support a conviction for possession with intent to distribute narcotics: co-conspirator liability, aiding and abetting, and dominion and control. 925 F.2d 1166, 1168–69 (9th Cir.1991). The evidence presented at Ramirez–Robles's trial supports two of these theories, co conspirator liabili-

ty and aiding and abetting. Either theory is sufficient to uphold Ramirez–Robles's convictions.

■ The government presented a case against Ramirez–Robles based on circumstantial evidence and the testimony of his co-conspirator, Sheree Turner. Ramirez–Robles admitted to owning the scales used in the transaction and to having the knowledge necessary to sell a quarter pound of methamphetamine. The government further argued that the voice on the tape heard during the transaction was admittedly his, and that Turner was referring to him when she spoke about the man whose approval was needed to do the deal. Turner testified that Ramirez–Robles provided the methamphetamine, set the price, and consulted with her in the kitchen during the deal.

This court has held that the uncorroborated testimony of a co-conspirator is sufficient evidence to sustain a conviction "unless the testimony is incredible or unsubstantial on its face." *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986). In this case, as in *Lopez,* the jury was informed of the deal that Turner received for her testimony. The jury had an opportunity to weigh Turner's testimony against the evidence presented by the defense that tended to undermine her story, Guthrie's testimony that Ramirez–Robles did not want him in the house and Westlake's testimony that Turner called someone outside of the house for advice during the transaction. Having heard this evidence, it was the jury's prerogative as the finder-of-fact to believe Turner's testimony and disbelieve Ramirez–Robles's. *Id.*

■ The facts established at trial are sufficient to support Ramirez–Robles's conviction on a co-conspirator liability theory. Ramirez–Robles cites four cases to bolster his argument that the government did not present sufficient evidence to support its case. *See United States v. Estrada–Macias,* 218 F.3d 1064 (9th Cir.2000); *Magallon–Jimenez,* 219 F.3d at 1109; *Sanchez–Mata,* 925 F.2d 1166; *United States v. Ramirez,* 880 F.2d 236 (9th Cir. 1989). All of these cases hold that a defendant's mere presence at a drug transaction is not enough to support a conviction. They do not, however, address the situation Ramirez–Robles finds himself in, because none of them involved co-conspirator testimony against the defendant. In Ramirez–Robles's case, he was in a romantic relationship with an admitted member of the conspiracy, lived in her house, and paid her bills. His voice was heard on the tape of the deal, his scales were used to weigh the methamphetamine sold, and his safe contained $3000. Thus, there was sufficient evidence for a jury to reasonably believe that Ramirez–Robles was part of the conspiracy that Turner described.

■■ Ramirez–Robles's conviction can also be supported under an aiding and abetting theory. This theory requires the government to prove that Ramirez–Robles "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." *Sanchez–Mata,* 925 F.2d at 1169 (quoting *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1948)). This court has held that "[m]ere casual association" with conspiring people is not enough to sustain a conviction. *Estrada–Macias,* 218 F.3d at 1066. The government presented evidence that Ramirez–Robles's involvement in the charged transaction went beyond "mere casual association." He provided the scales that were used in the deal, his voice is heard on the tape during the deal speaking to Turner, and Turner testified that he had provided the methamphetamine and set the price. Based on this evidence the

jury could have reasonably believed that Ramirez–Robles aided and abetted the distribution of methamphetamine.

The facts and testimony presented by the government in this case are sufficient to uphold the jury's conviction of Ramirez–Robles on either a theory of co-conspirator liability or aiding and abetting.

## C. Admissibility of Prior Bad Acts

▇▇▇▇ Ramirez–Robles argues that the district court erred when it admitted both evidence of his prior convictions and Juan Mendez's testimony that Ramirez–Robles had been selling him methamphetamine throughout the month of October 2001. A district court's decision to admit evidence of prior bad acts under Federal Rule of Evidence 404(b) is reviewed for abuse of discretion. *Arambula–Ruiz*, 987 F.2d at 602. Although such evidence is not admissible to show that the defendant has a bad character and is prone to criminal activity, it may be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). To prove that the evidence is offered for one of these reasons, it is the government's responsibility to show that the evidence (1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time. *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir.2002); *Arambula–Ruiz*, 987 F.2d at 602. The government must also show that the evidence satisfies Federal Rule of Evidence 403 such that its probative value is not outweighed by its prejudicial effect. *Arambula–Ruiz*, 987 F.2d at 602.

### 1. Prior Convictions

▇▇▇▇ Ramirez–Robles has two prior convictions, one for possession of methamphetamine (user quantity), and one for possession of methamphetamine for sale. Because the sales conviction meets the four requirements listed above, it is admissible. The user quantity conviction does not prove a material element and is not sufficiently similar to the charged transaction, so it is not admissible. However, we conclude that the district court's error in admitting the user quantity conviction is harmless.

### Prove A Material Element

The prior sales conviction shows that Ramirez–Robles had specialized knowledge regarding methamphetamine transactions. We have approved the use of this kind of specialized knowledge to show that the defendant would likely recognize the drug deal, and therefore, having recognized it, must have been part of it. *See United States v. Martinez*, 182 F.3d 1107, 1112 (9th Cir.1999). In *Martinez*, this court allowed the use of prior convictions to show that two men who were picking up a drug courier from an airport had the knowledge necessary to recognize the signs of drug importation, and therefore, because they went to pick up the courier, likely knew that she was carrying drugs. *Id.* at 1111–12. Because Ramirez–Robles was in the house during the transaction, his prior sales conviction could be relevant to establishing that he would be able to identify a drug deal taking place in his own house. Moreover, it tends to support Turner's claim that he was the mastermind of the operation because it shows that he had the knowledge necessary to sell large quantities of methamphetamine and would have known certain business practices common in that field, such as "fronting" [2] the methamphetamine.

---

**2.** "Fronting" is a sales technique in which

some or all of the drugs being sold are provid-

■ The rule of this circuit is that evidence of prior drug use is not ordinarily relevant under Rule 404(b) to prove conspiracy and possession with intent to distribute narcotics. *See United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1015–16 (9th Cir.1995); *United States v. Hegwood,* 977 F.2d 492, 497 (9th Cir.1992); *United States v. Mehrmanesh,* 689 F.2d 822, 831–32 (9th Cir.1982). Although there have been occasions in which we have held that prior drug use is relevant to show absence of mistake or accident in the charged transaction, *see, e.g., Hegwood,* 977 F.2d at 497, that exception is not applicable here. The user quantity conviction can only be used to prove that Ramirez–Robles knew what methamphetamine is and how to identify it. Because the government did not allege in this case that Ramirez–Robles personally handled the methamphetamine, the knowledge demonstrated by the user quantity conviction does not prove a material element of the government's case. Lacking such a "focused determination of relevance" the district court abused its discretion in admitting the evidence of Ramirez–Robles's conviction for possession of a user quantity of methamphetamine. *See Martinez,* 182 F.3d at 1112 (quoting *United States v. Mayans,* 17 F.3d 1174, 1183 (9th Cir.1994)).

*Sufficient Evidence*

■ Because Ramirez–Robles was convicted of these prior crimes, there is sufficient evidence to support the finding that he committed them. *Arambula–Ruiz,* 987 F.2d at 603.

*Similar to Charged Conduct*

■ Ramirez–Robles's prior conviction of possession for sale of methamphetamine is very similar to the current charge of distribution of methamphetamine. We

have upheld the admission of prior convictions that are much less similar. *See Martinez,* 182 F.3d at 1112 (holding that a prior heroin trafficking conviction is sufficiently similar to a methamphetamine smuggling charge).

■ However, because the relevant knowledge that the government is trying to prove is not familiarity with methamphetamine as a substance, but with distribution practices, Ramirez–Robles's conviction for possession of a user quantity of methamphetamine does not meet the similarity test.

*Not Too Remote*

■ Ramirez–Robles's prior convictions were in 1998 and 1997. At the time of the charged conduct they were three and four years old. This is not too remote, especially considering the similarity between his sales conviction and the charged transaction. *See United States v. Johnson,* 132 F.3d 1279, 1283 (9th Cir.1997) (allowing evidence of prior bad acts thirteen years prior because of the similarity of the conduct).

*Rule 403 Balancing*

■ The district court must balance the probative value of the prior bad acts against their prejudicial effect. Where the probative value is slight, moderate prejudice is unacceptable. *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir.1992). The district court's balancing of the probative value of the evidence against its prejudicial effect is reviewed for abuse of discretion. *Id.*

■ The district court did not abuse its discretion by admitting evidence of Ramirez–Robles's conviction of possession for sale. Relying on *Martinez,* the district

ed before payment is required. It is the tech-

nique employed in the charged transaction.

court could have concluded that the conviction showed knowledge that would have been necessary to complete the charged transaction. Ramirez–Robles argues that because he admitted to this knowledge, introduction of the conviction was unnecessary. However, he admitted to the knowledge in his defense, when he took the stand. Because the government could not rely on Ramirez–Robles to present the evidence of his specialized knowledge, the district court was correct to allow the introduction of the conviction of possession for sale because its probative value outweighed its prejudicial impact.

The probative value of the possession conviction, however, is weak. It is not particularly similar to the charged conduct, and it does not prove a material element of the charged conduct. Whereas the possession for sale conviction shows knowledge of the sales practices, and is therefore relevant to the charge of distribution, the simple possession conviction merely shows that Ramirez–Robles used methamphetamine, a fact to which he had admitted when he was arrested. The prejudicial effect of this conviction, however, was not strong. Given that Ramirez–Robles admitted to using methamphetamine and that his more serious conviction of possession for sale was admitted, his conviction for simple possession would not have had a prejudicial impact on the jury.

*Harmless Error*

█ Because we conclude that the district court abused its discretion by admitting evidence of Ramirez–Robles's prior conviction for possession of a user quantity of methamphetamine, we must determine whether or not the error was harmless. *See Vizcarra–Martinez,* 66 F.3d at 1016–17. The error is harmless if it is "more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *Id.* (quoting *Unit-*

*ed States v. Hill,* 953 F.2d 452, 458 (9th Cir.1991)). In this case, Ramirez–Robles's more serious conviction for possession of methamphetamine for sale was admissible, as was his admission that he was a methamphetamine user. With that information legitimately before the jury, the further evidence that Ramirez–Robles had a conviction for possession of a user quantity of methamphetamine is not likely to have affected the jury's verdict. Therefore we conclude that the district court's error in admitting Ramirez–Robles's user quantity conviction was harmless.

### 2. *Juan Mendez's Testimony*

█ Juan Mendez's testimony that Ramirez–Robles was selling methamphetamine to him about the time of the charged transaction is analyzed under the same rubric as the prior convictions.

*Prove a Material Element*

Mendez's testimony shows that Ramirez–Robles was actively selling methamphetamine during the time period of the charged transaction. Mendez testified that Ramirez–Robles "fronted" the methamphetamine to him and that Mendez paid him for the methamphetamine at the house where the charged transaction took place at about the time of the charged transaction. This is relevant to impeach Ramirez–Robles's testimony that he was not dealing methamphetamine at that time.

*Similar to Charged Conduct*

Although the sales to Juan Mendez were on a smaller scale than the charged transaction, they were of methamphetamine; therefore they are sufficiently similar to the charged conduct. The sales to Mendez also involved the same transaction method of "fronting" the methamphetamine as was used with Guthrie in the charged transaction.

*Based on Sufficient Evidence*

▉ Juan Mendez's testimony is uncorroborated, but the uncorroborated testimony of a co-conspirator is sufficient to uphold a conviction. *Lopez,* 803 F.2d at 973. Although Juan Mendez is a buyer rather than a co-conspirator, his complicity in an illegal transaction renders his relationship with Ramirez–Robles functionally similar to that of a co-conspirator for this analysis.

*Not Too Remote*

Because the sales to Mendez and the charged transaction occurred almost concurrently, the actions are not too remote.

*Rule 403    Balancing*

Mendez's testimony has a fairly high probative value. It shows that Ramirez–Robles had the knowledge necessary to complete the charged transaction and that he had the intent to do so. It is also relevant to impeach Ramirez–Robles, who testified that he was not currently dealing methamphetamine. The prejudicial impact of Mendez's testimony is weakened by the admissibility of Ramirez–Robles's prior conviction for possession of methamphetamine for sale. The prejudicial effect of the testimony is thus outweighed by the probative value of testimony. The district court did not err in admitting Juan Mendez's testimony.

## D. *Polygraph Testimony*

▉ The district court did not cite a specific rule of evidence to support its decision to exclude the polygraph testimony. However, we may affirm the decision based on any theory supported by the record and briefed by the parties. *Forest*

*Guardians v. United States Forest Serv.,* 329 F.3d 1089, 1097 (9th Cir.2003). There are three rules of evidence that could potentially be invoked to support the district court's decision to exclude polygraph evidence in this case. First, Federal Rule of Evidence 704 bars expert testimony regarding the defendant's mental state. We agree that Rule 704 excludes Question 2.[3] It does not, however, affect Questions 1 and 3, as they are factual questions and do not go to mental state.[4]

Because the polygraph evidence would come into court as expert testimony, the evidence could have been excluded under Federal Rule of Evidence 702 after a *Daubert* hearing on the reliability of the methods used to support the polygrapher's expert opinion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as the district court did not perform a *Daubert* hearing in this case, this ground for exclusion may not be used.

Finally, any kind of evidence may be excluded if its probative value will be substantially outweighed by its prejudicial impact. *See* Fed.R.Evid. 403. We hold that the significance of Questions 1 and 3 to the case against Ramirez–Robles, when combined with the powerful persuasive power of polygraph testimony, is sufficient to support the conclusion that the evidence was properly excluded under Federal Rule of Evidence 403.

## 1. *Rule 403 and Daubert Operate Independently*

Ramirez–Robles contends that the district court erred when it chose not to

---

**3.** Question 2: Did you know on October 24 of last year, that Sheree was going to sell that quarter pound of methamphetamine?

**4.** Question 1: Was that quarter pound of methamphetamine sold on October 24th last year yours?

Question 3: Did you order that quarter pound of methamphetamine that was sold on October 24 of last year?

perform a *Daubert* hearing on the polygraph evidence. The *Daubert* hearing Ramirez–Robles seeks, however, is not necessary if the proffered evidence can be excluded by Rule 403. Rule 403 and *Daubert* address different aspects of evidence and therefore act independently. Rule 403 requires the court to balance the probative value of evidence against its potentially prejudicial impact on the jury's perception of the case. *Daubert*, on the other hand, establishes a standard by which the court must evaluate expert testimony for its reliability before admitting it into court. Regardless of the reliability that a *Daubert* hearing may or may not have shown in this case, the polygraph testimony could have been excluded by Rule 403 if its probative value is outweighed by its prejudicial impact.

In *United States v. Benavidez–Benavidez,* this court recognized that distinction. In that case, the district court had excluded evidence under Rule 702 after a *Daubert* hearing and also, independently, under Rule 403. 217 F.3d 720, 725 (9th Cir.2000). On appeal the defendant claimed that the district court erred in its application of the *Daubert* hearing because the district court had based its *Daubert* exclusion on only one factor-widespread acceptance in the scientific community. This court declined to reach the *Daubert* issue in the case because the district court's decision to exclude the polygraph evidence could be upheld on the basis of Rule 403 alone: "The district court's exclusion of the polygraph evidence under Fed. R.Evid. 403 is, standing alone, sufficient." *Id.* This court went on to state:

> Certainly, as able defense counsel urged at oral argument, the courts should allow science to evolve in the courtroom. However, this evolution will not come at the expense of trial court discretion in assessing whether probative value exceeds the prejudicial effect on the jury.

Having found exclusion of evidence proper under Rule 403, we need not reach the issue of whether the district court also properly excluded the evidence under Rules 702 or 704(b) or improperly credited the government's polygraph expert.... Once the probative value of a piece of evidence is found to be substantially outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can make that same evidence admissible.

*Id.* Thus, the fact that the district court performed a *Daubert* hearing in *Benavidez–Benavidez* and did not do so in this case is irrelevant to the issue of whether the polygraph evidence may be excluded under Rule 403. The relevant question is whether the record supports the exclusion of the evidence under Rule 403.

### 2. *The Record Supports a Decision on Rule 403*

Rule 403 requires the exclusion of evidence, the probative value of which is substantially outweighed by its prejudicial impact. In *Benavidez–Benavidez*, this court held that the district court did not abuse its discretion when it excluded polygraph evidence under Rule 403 by "citing the special risk that the jury might give excessive weight to the polygrapher's conclusions." *Id.*

Although never articulated in those words, the "special risk" of polygraph testimony was apparent to the judge and lawyers in this case. In the government's response to the defendant's Motion to Admit Polygraph Evidence, the government argued that the evidence was inadmissible under Rule 704(b), because it relates to the defendant's mental state or condition, and under Rule 403, because its probative value is outweighed by the danger of unfair prejudice, citing *Benavidez–Benavidez*. The government added a footnote stating,

"The pertinent part of Federal Rule of Evidence 403 provides: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." GER 5.

The government then argued,

> If the court agrees that the polygraph evidence is not admissible under FRE 704 and/or FRE 403, then the court need not conduct a separate *Daubert* hearing to determine whether polygraph evidence is admissible as scientific evidence under FRE 702. A *Daubert* hearing would be quite lengthy and require substantially more preparation and briefing. As such, both parties request that the court first rule on the admissibility of the polygraph under FRE 704(b) and/or FRE 403.

This was the posture of the issue before the district court.

The district court did not articulate which basis it was using to support its finding that the evidence is excludable. The statement of the court was:

> I understand. I used to do a lot of criminal defense work, and I was always scared to death of polygraph evidence because usually it was the Government that was trying to use it or the State.
>
> I am not going to allow it. I don't want to be the first judge to allow polygraph evidence. I don't feel like setting any markers there, and it is an interesting question to submit to the appeals court. So I am going to deny the motion to admit the polygraph evidence.

Transcript of Pretrial Telephone Conference of November 12, 2002 at 4–5. These comments do not distinguish whether the district court was relying on Rule 403,

Rule 704, or both. The district court's statements can most reasonably be interpreted as a ruling on Rule 403. As we have noted, Rule 704 relates only to Question 2, involving the defendant's mental state. The ruling of the district court excluded all polygraph testimony, which would only be justified under Rule 403.

In this case, the potentially prejudicial effect of admitting the polygraph evidence was high.[5] Although Questions 1 and 3 do not go to Ramirez–Robles's mental state, they deal with pivotal elements of the prosecution's case. Whereas the prosecution must build its case circumstantially, allowing the polygraph evidence would have allowed Ramirez–Robles to refute the case with his own, certified-truthful testimony. Because this case turned on the relative credibility of Ramirez–Robles as opposed to Turner, the polygrapher's testimony that Ramirez–Robles was being truthful when he said he did not own the methamphetamine that was sold and did not order it could have been very prejudicial in this case. The highly influential nature of polygraph testimony, and its place in this case, support the conclusion that the evidence was properly excluded.

This conclusion is bolstered by evaluating the probative value of the polygraph testimony. The polygraph questions establish ownership and possession but leave open the question of mastery over the transaction. As defense counsel noted in the pretrial conference, the jury could hear this evidence and still conclude that Ramirez–Robles was guilty. The probative value of the testimony is thus limited to two narrow issues.

Finally, this evidence has the potential to mislead members of the jury as well as

---

**5.** Although we conclude that the polygraph evidence Ramirez–Robles sought to present in this case was prejudicial, we do not in so doing suggest that there is an automatic exclusion of all polygraph evidence.

prejudice them. Although Questions 1 and 3 go to narrow issues, the closeness of the factual details to the ultimate issue could easily have afforded a jury argument that Ramirez–Robles's answers to these questions had much broader significance in the case.

Because these concerns were before the district court when it made its decision, we hold that the record supports the exclusion of the polygraph evidence on the basis of Rule 403.

### III.  Conclusion

The evidence presented by the government is sufficient to uphold Ramirez–Robles's conviction.  The district court did not abuse its discretion in admitting the evidence of Ramirez Robles's prior conviction for possession of methamphetamine for sale and the testimony of Juan Mendez that Ramirez–Robles had been selling him methamphetamine at the time of the charged transaction.  Although it was an abuse of discretion to admit Ramirez–Robles's prior conviction for possession of a user quantity of methamphetamine, the error is harmless.  Finally, the district court did not err in excluding the polygraph testimony under Federal Rule of Evidence 403. The highly prejudicial nature outweighs the probative value of the polygraph testimony at issue in this case.

**AFFIRMED.**