**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAN DIXON and HEIDI DIXON,<br><br>    Plaintiffs - Appellees,<br><br>  v.<br><br>CITY OF COEUR D'ALENE,<br><br>    Defendant - Appellant. | No. 11-35978<br><br>D.C. No. 2:10-cv-00078-LMB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Idaho
Larry M. Boyle, Magistrate Judge, Presiding

Argued and Submitted October 1, 2013
University of Idaho Law School

Before: SCHROEDER, THOMAS, and N.R. SMITH, Circuit Judges.

The City of Coeur d'Alene ("the City") appeals the district court's exclusion

of polygraph evidence at trial and the denial of the City's renewed motion for

judgment as a matter law following a jury verdict in favor of Dan and Heidi Dixon.

Because the parties are familiar with the history of this case, we need not recount it

here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

I

Under our deferential standard of review, we conclude that the district court did not abuse its discretion by excluding any mention that Dixon took—or would refuse to take—polygraph examinations. As we have previously stated, introduction of unstipulated polygraph evidence presents a "special risk that the jury might give excessive weight to the polygrapher's conclusions," especially if the case turns on the relative credibility of the parties. *United States v. Ramirez-Robles*, 386 F.3d 1234, 1245–47 (9th Cir. 2004) (internal quotation marks and citation omitted). Even the introduction of the mere fact of testing, without disclosure of results, presents the real possibility that the jury could reasonably likely infer what the results are. *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988).

In this case, the district court conducted the appropriate analysis and balancing and concluded that the evidence should be excluded. We decline to second guess the trial judge's decision.

II

"We review de novo the district court's denial of a renewed motion for judgment as a matter of law." *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1131 (9th Cir. 2013) (internal quotation marks and citation omitted). In

reviewing the verdict, "[w]e ask whether the evidence, construed in the light most favorable to the nonmoving party[,] permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). In other words, the "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (internal quotation marks and citation omitted). We must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

A

The City argues that the district court erred in allowing the jury to consider Dixon's claim that the City violated his substantive due process rights and was liable under the "single-incident" failure-to-train theory. In the alternative, the City argues that there was insufficient evidence to support the jury's verdict as to this claim. However, it is unnecessary for us to decide those federal questions, because the jury returned a general damage verdict, which can be sustained by the alternative legally viable state law claims upon which the damage verdict also rests. *Webb v. Sloan*, 330 F.3d 1158, 1166 (9th Cir. 2003).

-3-

There were two legally sustainable state law theories of liability, constructive discharge and negligent infliction of emotional distress, and a general damage verdict, awarding economic and non-economic damages, as to all theories of liability (both state and federal claims). In determining whether alternative theories can sustain the general damage verdict, we consider:

> (1) the potential for confusion of the jury; (2) whether the losing party's defenses apply to the count upon which the verdict is being sustained; (3) the strength of the evidence supporting the count relied upon to sustain the verdict; and (4) the extent to which the same disputed issues of fact apply to the various legal theories.

*Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 62 F.3d 280, 285-86 (9th Cir. 1995) (internal quotation marks and citation omitted).

In examining this record, we conclude that the evidence presented was common to all liability theories, the evidence was sufficiently strong to support the state law theories, the defenses raised by the City were sufficiently common to sustain the verdict, and the evidence pertaining to the federal theories did not present such a potential for jury confusion that the general damage verdict could not be sustained under the state law claims.

Examination of the extensive special jury verdict form bolsters this conclusion. The jury was specifically questioned on all counts and reached a unanimous verdict concluding that Dixon was (1) constructively discharged by the

City, (2) terminated without good cause, (3) terminated for reasons that were arbitrary and lacking a rational basis, and (4) permanently foreclosed from pursuing any occupation in law enforcement because of the City's actions.

The jury also concluded that the City negligently caused Dixon and his wife emotional distress and awarded economic and non-economic damages. Thus, there were alternative legally viable theories on which the damage verdict could rest and, therefore, there was sufficient evidence to sustain the judgment. Accordingly, we need not reach the merits of the federal claim.

B

The City does not challenge the jury verdict as to negligent infliction of emotional distress. It does dispute the sufficiency of the evidence as to the constructive discharge claim in its renewed motion for judgment as a matter of law. However, it was undisputed that the City demoted Dixon two ranks, reduced his pay thirty percent, and branded him as dishonest. An expert witness testified that, based on his experience as a police officer, it would have been "[t]otally unreasonable" for Dixon to return to work after being "branded a liar, cheater, harasser, stealer and thief." Another expert, a forensic psychologist, testified that Dixon reasonably felt humiliated and disgraced by the internal investigation, and that Dixon's demotion after seventeen years in the police department was "not

simply a separation of a job," but "a separation of an individual from their very identity." And even without the expert testimony, the jury could rationally conclude that Dixon's new working conditions were "so intolerable that a reasonable person in [his] position would have felt compelled to resign[.]" *Waterman v. Nationwide Mut. Ins. Co.*, 201 P.3d 640, 645 (Idaho 2009) (citing *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007)).

The City argues that Dixon cannot claim intolerable working conditions because he never showed up to work after his demotion. But this argument ignores the objective nature of the inquiry—the question is not whether Dixon personally felt that the conditions were intolerable, but rather whether "a reasonable person in [Dixon's] position would have felt compelled to resign." *Id.*

III

In summary, the district court did not abuse its discretion in declining to admit polygraph evidence. Construing the evidence in the light most favorable to the plaintiff, there was sufficient evidence to sustain the verdict with respect to the constructive discharge claim, and the state did not challenge the negligent infliction of emotional distress claim. Given this conclusion, we need not–and do not–reach any other issue urged by the parties.

**AFFIRMED.**