T.C. Memo. 2018-97

UNITED STATES TAX COURT

L. DONALD GUESS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14032-16.                    Filed June 28, 2018.

<u>Darrell D. Hallett</u>, <u>Cory L. Johnson</u>, and <u>Michael Cavalier Durney</u>, for petitioner.

<u>Michael S. Hensley</u> and <u>Jeffrey L. Heinkel</u>, for respondent.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  Respondent determined deficiencies in petitioner's Federal income tax, as well as fraud penalties pursuant to section 6663,[1] for 2001 and 2002 (years involved) as follows:

| Year | Deficiency | Penalty sec. 6663 |
|------|------------|-------------------|
| 2001 | $207,965 | $155,973.75 |
| 2002 | 103,495 | 77,621.25 |

The deficiencies arise from petitioner's purported charitable contribution of stock in one of his closely held corporations to a charitable foundation petitioner founded.  Petitioner's purported stock transfer was the subject of a criminal trial, United States v. Guess, No. 3:08-cr-04341-JM (S.D. Cal. July 2, 2010), aff'd, 472 F. App'x 546 (9th Cir. 2012), wherein petitioner was convicted of filing a false tax return for 2001 and filing a false tax return for 2002, each in violation of section 7206(1).  In reaching its verdict, the District Court found that petitioner had not transferred ownership of the stock to the charitable foundation.

---

[1]All section references are to the Internal Revenue Code (Code), as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Petitioner has conceded the amount of the deficiency in tax determined by respondent for each of the years involved.[2] The issues remaining to be decided are: (1) inasmuch as the notice of deficiency was issued (on March 22, 2016) more than three years after petitioner filed his 2001 and 2002 income tax returns, whether the section 6501(c)(1) exception to the general three-year period of limitations on assessment and collection applies; (2) because petitioner was convicted of filing false tax returns for 2001 and 2002, in violation of section 7206(1), whether the doctrines of res judicata and/or collateral estoppel preclude petitioner from asserting that he is not liable for the section 6663 fraud penalty; and (3) whether respondent has met his burden of production with respect to the section 6663 fraud penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

I.      Petitioner and Xelan, Inc.

Petitioner is a dentist with a background in finance. While practicing dentistry, petitioner determined that he could build a financial consulting practice

---

[2]As will be discussed infra pp. 14-15, petitioner has attempted to revoke his concession with respect to the deficiency. We reject this attempt.

[*4] advising medical professionals. In 1971 petitioner founded Pyramidal Funding Systems, doing business as Xelan Insurance Services (Pyramidal), which initially focused on providing disability insurance for medical professionals. Petitioner was the sole shareholder of Pyramidal. Through Pyramidal, petitioner developed financial structures for participating doctors, established pension plans, and contracted with a major insurance company to offer life insurance inside those pension plans.

By 1985 Pyramidal employed four individuals developing and administering financial management, insurance, and investments for the company's clients. At this point petitioner decided to leave the practice of dentistry and devote his full attention to expanding his financial services business.

In 1985 or 1986 petitioner hired Les Buck to help manage the business. A personal friend of petitioner, Mr. Buck held a master's degree in business administration from Harvard University and was an experienced executive. By 1986 Mr. Buck operated the administration and management of the organization while petitioner oversaw all promotional, training, and sales work. Also at about this time petitioner hired David Jacquot to serve as the business' general counsel.

By 2001 petitioner had established a number of corporate entities to facilitate his financial business (Xelan corporations). Xelan, Inc., was established

[*5] as the parent corporation. Underneath that entity were: (1) Pyramidal; (2) the Economic Association of Health Professionals, a membership organization; (3) Xelan Investment Services (XIS); and (4) Xelan Pension Services. The Xelan corporations employed between 16 and 20 individuals. Initially, petitioner was the sole shareholder of each corporation. However, because of regulatory requirements, petitioner could not be the sole shareholder of both an insurance corporation, such as Pyramidal, and a corporation which provided investment management services and sold annuities and other investments, such as XIS. Thus petitioner transferred one share of Pyramidal voting stock to his son, Graham Guess, in 2001, and at the same time Graham was made president of Pyramidal.[3]

In addition to the Xelan corporations, petitioner established Xelan Foundation in 1997, which was recognized as a tax-exempt organization by the Internal Revenue Service (IRS) in both 2001 and 2002. Xelan Foundation was established, according to petitioner, as "a donor advised charity * * *. A donor could make a donation and obtain a charitable deduction for tax purposes, then

---

[3]Pyramidal's outstanding stock consisted of 100,000 nonvoting shares and one voting share.

[*6] advise the Foundation's Board of Directors ('Board') where and when he/she wished the Foundation to make transfers of donated funds to tax exempt charitable organizations. The Board could follow the donor's advice, but was not required to do so."

II.    Petitioner's False 2001 and 2002 Federal Income Tax Returns

Petitioner's 2001 Form 1040, U.S. Individual Income Tax Return, claimed a charitable contribution deduction of $800,000, of which $268,122 was classified as "disallowed contributions". This latter amount was carried forward to petitioner's 2002 Federal income tax return and deducted for that year. The charitable contribution deduction arose from a purported donation by petitioner of 33,000 shares of Pyramidal stock to Xelan Foundation.

Petitioner spoke with Mr. Jacquot with respect to completing the putative stock donation before the end of 2001. Melissa Murphy,[4] a paralegal, was instructed to draft all necessary documents and include the dates to be used on the documents. She collected all necessary signatures. Although Ms. Murphy was Mr. Jacquot's subordinate, she also worked for Mr. Buck. At trial Ms. Murphy testified that she did as she was instructed by Mr. Buck. She had no knowledge of

---

[4]Ms. Murphy was subsequently married and used the surname Blose after her marriage.

[*7] the putative stock donation following completion of her assignment. Further, she had no knowledge of petitioner's beliefs and intent with respect to the putative charitable contribution.

Petitioner did not prepare his own tax returns; instead he engaged a certified public accountant, Judith Hamilton. In preparing petitioner's 2001 and 2002 Federal income tax returns, Ms. Hamilton relied on information provided by petitioner. This led to difficulty in preparing the returns. In a letter to Mr. Buck, Ms. Hamilton detailed the problems she encountered in reporting the putative charitable contribution:

> I need your assistance in reconciling some issues with Don's 2001 tax returns. We didn't receive the form 8283[5] until noon today [October 15, 2002, the last (extended) day to timely file petitioner's 2001 Federal income tax return] and there was additional information we needed to properly complete the returns. We decided it best to go with what we had with some blanks filled in with our best guesses and then amend later if needed.
>
> The date acquired, how acquired and adjusted cost basis of the $800,000 fair market value of Pyramidal Funding was not included on the Form 8283. The difference between the cost basis and the fair market value is a preference item for California alternative minimum tax purposes. After discussions with John Ferrington, we used an adjusted cost basis of $370,000 which resulted in no alternative minimum tax for Dr. Guess. Can you either confirm this information

---

[5]Form 8283, Noncash Charitable Contributions, is used by taxpayers to report noncash contributions to charity.

**[*8]**  or advise the correct information and we will prepare amended returns.

The IRS opened a criminal investigation of this putative donation which led to petitioner's indictment in the U.S. District Court for the Southern District of California on two counts of filing false tax returns. The indictment charged that petitioner willfully made and subscribed to Federal income tax returns, verified by petitioner's written declaration made under penalties of perjury, which he did not believe to be true and correct as to every material matter. The indictment stated that petitioner's 2001 and 2002 Federal income tax returns,

> prepared and signed in the Southern District of California and * * * filed with the Internal Revenue Service, stated that, in 2001, defendant LEWIS DONALD GUESS had donated to the xelan Foundation $800,000 worth of stock in Pyramidal Funding Systems, whereas, as he then well knew and believed, he had not donated $800,000 worth of stock in Pyramidal Funding Systems to the xelan Foundation in 2001; all in violation of Title 26, United States Code, Section 7206(1).

Section 7206(1) provides that any person who

> [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter * * * shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

**[*9]** Petitioner was tried before the Honorable Jeffrey T. Miller, U.S. District Court Judge. Petitioner elected to waive his right to trial by jury, and a bench trial was held. The District Court rendered a guilty verdict with respect to both counts on July 2, 2010. In its opinion the District Court stated that in order to prevail the Government was required to prove beyond a reasonable doubt that (1) petitioner made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return/statement/document contained a written declaration that it was made under penalties of perjury; (3) petitioner did not believe that the return/statement/document was true and correct as to every material matter; and (4) petitioner falsely subscribed to the return/statement/ document willfully with the specific intent to violate the law. The District Court found that all four elements were proven beyond a reasonable doubt.

First, the District Court found that, with respect to the putative donation of the stock,

> the purported transfer of Pyramidal stock from the defendant [i.e., petitioner] to XF was illusory, to use popular parlance, a shell game, whereby the defendant was purporting to transfer shares from an entity, Pyramidal, of which he was the sole owner, to another entity solely owned by defendant. The records show that the defendant exclusively reaped the profits of these entities and exerted ultimate control over them. The backdating of documents, including share certificates, the questionable circumstances surrounding signatures,

**[*10]** when they were affixed and, indeed, their genuineness, all are strong indications of the illusory nature of this purported transaction.

Additionally, Graham Guess, defendant's own son and nominal president of Pyramidal, knew nothing of the alleged gift--that is, the gift of 33,000 shares of Pyramidal--and does not even recall any such transfer. He did not attend board meetings and made no decisions for Pyramidal. One thing Graham Guess did know was that the date associated with what purported to be his signature transferring shares was not his handwriting. And finally, in response to my own question, he stated that had he signed a certificate purporting to transfer 33,000 shares of Pyramidal stock, he would have remembered such an event; he had no memory of that.

Pyramidal tax returns through 2003 list defendant as 100 percent owner. Other forms, including the ADV reconciliation forms, list defendant as the sole owner of Pyramidal and Xelan Incorporated up to 2004. All Pyramidal profits, approximately $2.7 million in 2002, went to defendant after compensation, bonuses to officers; nothing went to XF.

[Guess, slip op. at 8-10.]

The District Court also found that

the circumstances under which the IRS Form 8283 was filled out initially were highly suspect. At the time Judith Hamilton prepared and signed the form, she had no documentation concerning the alleged $800,000 stock donation or transfer and improperly dated the form where the charity should have done so. The term "fire drill" was often used by the defense to describe the frenetic circumstances they assert attended the preparation of the tax forms of defendant and those of the Xelan entities. The circumstances, rather than being frenetic, reflect what appear to be a slicing and dicing of the preparation and reported responsibilities among Xelan employees, corporate tax professionals, personal tax professionals, and the principals themselves, combined with conscious avoidance of information that would have doomed the validity of the alleged

[*11] donation.  In any event, the Form 8283 was falsely prepared and reflected a false transaction.
    [Id., slip op. at 7-8.]

With respect to the putative receipt of the shares, the District Court judge found

that

> Wendy Ruiz, who I found to be a credible witness, who at all relevant times was the executive director and administrator for XF with direct responsibility for overseeing all contributions and distributions for XF, testified that the alleged donation of Pyramidal shares by the defendant never occurred in 2001 as it was not completed and was not booked.  Ms. Ruiz's testimony in this regard was buttressed by her careful recordkeeping, including maintaining the donation master spreadsheets, known as the quote, Smart database, end quote, which memorialized all donations to XF * * *.  Moreover, the defendant, who directly communicated with Ms. Ruiz, never directed, much less mentioned to Ms. Ruiz, to accept or book a donation of Pyramidal stock to XF on his account.
>
> The accuracy and veracity of Ms. Ruiz's testimony [is] supported by the fact that the defendant's own foundation file, No. 8049 and bearing Exhibit No. 51 in this case, containing a full accounting of the donations and contributions by defendant over time, never reflected an entry for a contribution of stock.  Although a stock certificate was ultimately observed by Ms. Ruiz sometime after July 15 of 2002, it was unaccompanied by any indication of value or a receipt.
>     [Id., slip op. at 6-7.]

Petitioner appealed his conviction to the Court of Appeals for the Ninth

Circuit, which affirmed the conviction.

[*12] On March 22, 2016, respondent issued a notice of deficiency to petitioner determining deficiencies in Federal income tax and fraud penalties with respect to 2001 and 2002. On Form 886-A, Explanation of Items, respondent stated: "Based on the judgment in a criminal case taxpayer didn't make the stock donation as he calimed [sic] on his 2001 return. Taxpayer was convicted of making a false tax return, therefore no charitable donation allowed for 2001." Continuing, the Form 886-A stated: "The charitable carry over was the remanding [sic] donation from 2001. Since the stock donation didn't occurred [sic] in 2001 according to the criminal case judgement and taxpayer is adjudged guilty of making a false tax return. Therefore 2001 stock donation was disallowed and 2002 carry forward amount also disallowed [sic] due to no donation in 2001."

Petitioner resided in California when he timely filed his petition on June 17, 2016.

OPINION

I.    Timeliness of the Notice of Deficiency

The threshold issue in this matter is whether petitioner committed fraud in filing his 2001 and 2002 Federal income tax returns. Respondent issued the notice of deficiency in this matter on March 22, 2016. Petitioner filed his 2001 Form 1040 on October 21, 2002, and his 2002 Form 1040 on October 18, 2003. Section

[*13] 6501(a) requires that, except as otherwise provided, the amount of tax imposed by the Code shall be assessed within three years after the return was filed. Thus, under the general rule in section 6501(a), the issuance of the notice of deficiency was untimely.

Respondent asserts that petitioner committed fraud in filing his 2001 and 2002 Federal income tax returns. Section 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time", thus rendering the notice of deficiency valid.

Generally, a taxpayer bears the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Commissioner has the burden of proving by clear and convincing evidence that some portion of an underpayment is due to fraud. Sec. 7454(a); Rule 142(b). Fraud is not to be imputed or presumed. Parks v. Commissioner, 94 T.C. 654, 660 (1990). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Id.; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).

To establish fraud, the Commissioner must prove via clear and convincing evidence for each year: (1) an underpayment of tax exists and (2) the taxpayer had

[*14] a fraudulent intent, i.e., that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Parks v. Commissioner, 94 T.C. at 660-661.

### A.    Underpayment of Tax

The first issue to resolve is:  Did petitioner underpay his tax for 2001 and 2002?  At trial the following colloquy occurred between the Court and petitioner's counsel:

> THE COURT: Are you challenging any of the determinations that the Government has made?
>
> MR. HALLETT: I think their position is you don't need to get to each determination because if there's not fraud, there's no--there's no (indiscernible).
>
> THE COURT: I understand that.  But suppose I say there is no [sic] fraud, are you going to present any evidence to show that the Government's determination is wrong?
>
> MR. HALLETT: No.
>
> THE COURT: So then you will basically forfeit the correctness of the determination by saying it's barred by the statute of limitation because there is no fraud.
>
> MR. HALLETT: Yes.

Despite these statements, petitioner argues on brief that respondent has failed to prove that an underpayment exists.  He asserts that "[i]f there was a gift of

**[*15]** Pyramidal stock to the Foundation, there is no underpayment of tax. The testimony and exhibits show that 33,000 shares of stock were transferred by Guess to the Foundation by December 31, 2001. That transfer entitles Guess to the deduction claimed on the tax return." Continuing, petitioner asserts:

> Respondent relies upon the colloquy between the Court and Counsel at the beginning of the trial to support his "concession" argument. * * * There, Petitioner's counsel stated there is no need to get to the amount of the tax due if the court finds there is no fraud. Petitioner argues that if fraud does apply, then petitioner is liable, but if it doesn't, there is no liability. Part and parcel to Respondent's burden to prove that the fraud exception applies is proof of an underpayment, as well as proving intent to evade the taxes attributable to the underpayment.

We reject petitioner's attempt to revoke his counsel's concession at trial. The Court asked petitioner's counsel: "So then you will basically forfeit the correctness of the determination by saying it's barred by the statute of limitation because there is no fraud." In answer, petitioner's counsel said "Yes." Since petitioner's counsel conceded that respondent's determination that underpayments exist with respect to petitioner's 2001 and 2002 Federal income tax and that respondent's determinations as to the amounts of the underpayments are correct, there is nothing left for respondent to prove with respect to the existence of the underpayments.

**[\*16]** Moreover, petitioner is precluded from asserting that there was no underpayments of tax for 2001 and 2002 by the judicial doctrine of collateral estoppel. Collateral estoppel bars relitigating an issue that was resolved in a prior proceeding.

> The doctrine of collateral estoppel, or issue preclusion, provides that once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." * * * [Montana v. United States, 440 U.S. 147, 153 (1979)]. The preclusive effect of a prior court's factual determination depends on whether the prior court had jurisdiction to, and did, determine the fact at issue. Brotman v. Commissioner, 105 T.C. 141, 153 (1995). For collateral estoppel to apply, resolution of the disputed issue must have been essential to the prior decision. Meier v. Commissioner, 91 T.C. 273, 282 (1988).

Morse v. Commissioner, T.C. Memo. 2003-332, 2003 WL 22853796, at \*6, aff'd, 491 F.3d 829 (8th Cir. 2005).

The question of whether petitioner validly donated the 33,000 shares of Pyramidal stock to Xelan Foundation was necessarily and fully litigated in the District Court. The Government's case that petitioner had filed false tax returns in 2001 and 2002 was based on the premise that petitioner did not donate his Pyramidal stock to Xelan Foundation as of December 31, 2001. To reach a verdict that petitioner had filed false tax returns, the District Court was necessarily

**[\*17]** required to determine that no donation occurred by the end of 2001.[6]  This verdict was subsequently upheld by the Court of Appeals for the Ninth Circuit.  And the determination of the amounts of underpayments in the notice of deficiency is based on deductions petitioner claimed on the false tax returns.  We therefore find that petitioner had underpayments of tax for 2001 and 2002.

      B.     <u>Fraudulent Intent</u>

      1.     <u>Introduction</u>

The Commissioner must also prove that some portion of the underpayment is due to fraud (i.e., the taxpayer had fraudulent intent).  This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes.  See <u>Clayton v. Commissioner</u>, 102 T.C. 632, 647 (1994).  Since direct evidence of fraud is rarely available, the Commissioner may prove the taxpayer's fraud by circumstantial evidence, and reasonable inferences may be drawn from the relevant facts.  See <u>Spies v. United States</u>, 317 U.S. 492, 499 (1943); <u>Bradford v.</u>

---

[6]In criticizing the criminal trial verdict, petitioner states that the District Court did not fully understand the donation of the Pyramidal stock because Messrs. Buck and Jacquot, having invoked their Fifth Amendment rights, did not testify.  Messrs. Buck and Jacquot did not testify before this Court in this matter.

**[\*18]** <u>Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), <u>aff'g</u> T.C. Memo. 1984-601; <u>Clayton v. Commissioner</u>, 102 T.C. at 647.

Conduct that may indicate fraudulent intent, commonly referred to as "badges of fraud", includes, but is not limited to: (1) involvement in illegal activities, (2) understatement of income, (3) inadequate records, (4) failure to file tax returns, (5) implausible or inconsistent explanations of behavior, (6) concealing assets, and (7) failure to cooperate with tax authorities. <u>Bradford v. Commissioner</u>, 796 F.2d at 307-308. Although no single factor is necessarily sufficient to establish fraud, a combination of several factors is persuasive circumstantial evidence of fraud. <u>Id.</u> at 307. An intent to mislead may be inferred from a pattern of conduct, <u>see</u> <u>Spies</u>, 317 U.S. at 499 ("[W]e would think affirmative willful attempt may be inferred from conduct[.]"), or from a taxpayer's entire course of conduct, <u>see</u> <u>Stone v. Commissioner</u>, 56 T.C. 213, 223-224 (1971). A taxpayer's background and the context of the events in question may be considered circumstantial evidence of fraud. <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992); <u>see</u> <u>Spies</u>, 317 U.S. at 497; <u>United States v. Murdock</u>, 290 U.S. 389, 395 (1933).

**[\*19]**         2.         Application of Collateral Estoppel and Res Judicata

Respondent asserts that the doctrines of collateral estoppel and res judicata

may be applied in deciding whether petitioner committed fraud.  But a conviction

under section 7206(1) for the willful filing of a false tax return does not per se

establish that the tax underpayment is necessarily due to fraud.  Wright v.

Commissioner, 84 T.C. 636, 642-643 (1985).

3.         Application of Fraud Factors

As this Court pointed out in Morse v. Commissioner, T.C. Memo. 2003-

332, 2003 WL 22853796, at \*5, a conviction for filing false Federal income tax

returns under section 7206(1) is highly persuasive evidence that the taxpayer

intended to evade tax.  And we are mindful that as part of reaching the verdict, the

District Court found that petitioner had engaged in a pattern of understating his

Federal income tax for both 2001 and 2002.

Respondent established that petitioner's records were, at least, inadequate.

Graham Guess, petitioner's son and the president of Pyramidal, testified at the

criminal trial that:  (1) he was unaware of any donation of shares to Xelan

Foundation in 2001, (2) he had no memory of signing the stock certificate that was

part of the putative transfer, and (3) the written date on the stock certificate did not

look like his handwriting.  Further, the Form 8283 provided to petitioner's

[*20] accountant, Ms. Hamilton, for petitioner's 2001 Form 1040 was incomplete and had to be completed with her "best guesses". After the putative donation, Pyramidal's 2001 and 2002 Federal income tax returns reported that petitioner was the sole shareholder of Pyramidal. And we note that Xelan Foundation did not record in its 2001 records that it received a transfer of 33,000 shares of Pyramidal stock from petitioner.

Petitioner's education and sophistication also support a finding of fraud. Petitioner is a longtime financial adviser and developed financial planning strategies for a living.

Petitioner alleges that he, in fact, donated Pyramidal stock to Xelan Foundation in 2001 and that the District Court erred in finding otherwise. We do not agree with this allegation. As was discussed supra pp. 16-17, the District Court found that petitioner did not donate 33,000 shares of Pyramidal stock in 2001 to Xelan Foundation in reaching its verdict that petitioner filed false tax returns in violation of section 7206(1). And tellingly, the Court of Appeals for the Ninth Circuit upheld the District Court's determination.

Alternatively, petitioner maintains that even if the donation was not, in fact, completed by the end of 2001, he reasonably believed that it was; hence, according to petitioner, he had no fraudulent intent. At trial petitioner testified

**[\*21]** that he honestly intended to donate the Pyramidal stock to Xelan Foundation by the end of 2001 and that he relied on Messrs. Buck and Jacquot to timely effect the transfer.

We do not find petitioner's testimony in this regard credible. First, we note that petitioner did not inform Graham Guess, his son and the president of Pyramidal, that he intended to transfer 33,000 of its 100,000 outstanding nonvoting shares to Xelan Foundation. Moreover, petitioner did not inform anyone at Xelan Foundation that he intended to donate a substantial ownership interest in Pyramidal to the organization.

At trial respondent raised a previous encounter with the IRS wherein petitioner had not been forthcoming.[7] When questioned by respondent's counsel,

_____

[7]At trial petitioner's counsel objected to this testimony on the grounds of relevance. Relevance is a low threshold to pass, and we find this encounter relevant. We also note that this evidence is not excludible under Fed. R. Evid. 404(b). The Court of Appeals for the Ninth Circuit has stated that it views Fed. R. Evid. 404(b) as a "rule of inclusion". See United States v. Ayers, 924 F.2d 1468, 1472-1473 (9th Cir. 1991). The Court of Appeals has held that evidence of other acts is admissible under that rule where the evidence: (1) proves a material issue in the case, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time. See United States v. Ramirez-Robles, 386 F.3d 1234, 1242 (9th Cir. 2004); see also Ericson v. Commissioner, T.C. Memo. 2016-107; Sherrer v. Commissioner, T.C. Memo. 1999-122, aff'd, 5 F. App'x 719 (9th Cir. 2001). In this matter, the testimony helps establish petitioner's conduct in misleading the IRS, is similar to the offense in this matter, is based on petitioner's own testimony, and took place only two

(continued...)

[*22] petitioner admitted that in August 1999 he filed a Form 656, Offer in Compromise, offering to pay $10,000 to settle his outstanding tax liability for 1997.  In support of his offer-in-compromise, petitioner informed the IRS that he had a negative net worth in excess of $1 million, his monthly expenses exceeded his monthly income by $3,187, and the value of his stock in various X-elan corporations was $101,797.  Petitioner's statements were false.

In September 1999 petitioner formed a new business entity called XF Enterprises, LLC (XF Enterprises).  In October 1999 petitioner entered into an option agreement to purchase a house in Coronado, California, to be used as his personal residence, and he used XF Enterprises to pay $100,000 to exercise that option.  On April 4, 2000, petitioner made a $170,000 payment, and one day later, made a $1.73 million cash payment to complete the purchase of the home.  And we are mindful that the cash payments came from a concealed distribution to petitioner from a disability insurance policy he owned.

Further, we are mindful that by letter dated June 12, 2000, the IRS Appeals officer assigned to petitioner's case requested petitioner to furnish "current financial and other information" so that the appeals officer could evaluate his

[7](...continued)
years before the years involved in this matter.

[*23] offer-in-compromise. Petitioner's response to that request stated he owned no real property, despite his acquisition of the house.

The IRS rejected petitioner's offer-in-compromise on November 30, 2000. In doing so the IRS informed petitioner that during the investigation of the offer-in-compromise, it had discovered the unrevealed home purchase and concluded that because the home was purchased through XF Enterprises, petitioner was attempting to conceal purchase of the home and the assets used to acquire it.

Finally, we are mindful that on December 20, 2000, Ms. Hamilton, petitioner's accountant, faxed Mr. Buck and petitioner a form to withdraw the offer-in-compromise. On the cover sheet Ms. Hamilton stated: "I have some concerns about our failure to disclose assets and think we should withdraw the offer and proceed with a payment plan as soon as possible. Please let me know your thoughts." Against this history of petitioner's concealment and lack of candor, we have petitioner's unsubstantiated testimony that he acted in good faith, which we find not credible.

In sum, we hold that respondent has proven petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax.

**[*24]** C.  Conclusion Regarding Fraud and the Statute of Limitations

On the basis of the foregoing, we hold that for each of the years involved (i.e., 2001 and 2002), respondent has proven, by clear and convincing evidence, the underpayment of tax and that some portion of the underpayment was attributable to fraud.  Accordingly, the section 6501(c)(1) fraud exception to the general three-year statute of limitations applies for both 2001 and 2002.

II.  Section 6663 Fraud Penalty

Respondent determined penalties for fraud under section 6663 for the years involved.  Section 6663(a) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75% of the portion of the underpayment which is attributable to fraud.  Moreover, if any portion of an underpayment is attributable to fraud, the entire underpayment is treated as due to fraud unless the taxpayer can establish by a preponderance of the evidence that portion of the underpayment which is not attributable to fraud.  Sec. 6663(b).  Respondent's burden of proof is the same with respect to the section 6663 fraud penalty as it is with respect to the section 6501(c)(1) fraud exception to the general three-year statute of limitations.  Neely v. Commissioner, 116 T.C. 79, 85-86 (2001); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000).

[*25] As a threshold matter with respect to the section 6663 fraud penalty, respondent's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirements of section 6751(b). Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). To meet his burden of production with respect to the section 6663 fraud penalty, respondent must show there was written supervisory approval of the initial penalty determination. The stipulation of facts states that such supervisory approval was received before the section 6663 fraud penalty was imposed. Thus, respondent has established that supervisory approval was properly received.

We hold that petitioner is liable for the section 6663 fraud penalty for 2001 and 2002. As we have already discussed, respondent has established by clear and convincing evidence for each of the years involved (i.e., 2001 and 2002) that some portion of petitioner's underpayment of tax was attributable to fraud.

Petitioner has not provided any evidence to establish that any portion of the underpayment of tax was not attributable to fraud under section 6663(b). Consequently, we hold that petitioner is liable for the section 6663 fraud penalty for each of the years involved.

**[*26]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.
